The opinion of the Court was delivered at the present term, by
Parker C. J.
Samuel Bemis, the person from whom the plaintiffs would derive the settlement of the paupers, must be supposed from the report to have once had a settlement in Lexington ; and as it does not appear that he has ever gained a new settlement within this Commónwealth, he still, if alive, retains a settlement in that town, and, if he is dead, has transmitted it to his lawful children and grandchild, in which relation to him the paupers are supposed to stand. The case, therefore, will turn upon the validity of his marriage in New Hampshire with the mother of Mary and Julia, the two paupers for whose support the action is brought, as well as for that of the infant child of one of them, which, whether legitimate or not, will have the settlement of its mother.
Samuel Bemis, previous to his marriage in New Hampshire, had been married to another woman in this Commonwealth, who is still living ; but before the second marriage the first had been dissolved by a decree of divorce passed in this Court, on the compla'nt of his former wife, for the cause of adultery commit *515 ted by him. We think it very clear, that, by the laws of this Commonwealth, the marriage of the guilty party, after a divorce a vinculo for the cause of adultery, if contracted within this State, would be unlawful and void. The statutes which we think must have this construction are not expressed in very intelligible terms, but, on close examination of them, we think the mention of the legislature cannot be mistaken.
The second section of the statute of 1784, c. 40, provides, “ that if any person within this Commonwealth, being married or who hereafter shall marry, shall marry any person, the former husband or wife being alive, or who shall continue to live so married, and being thereof convicted, shall be sentenced,” &c. There are then a number of provisos or exceptions, the last of which is in the following words, viz.: “ Provided also, that this act, or any thing therein contained, shall not extend to any person that is or shall be, at the time of such marriage, divorced, by sentence of any court whatsoever, which has or may have legal jurisdiction for that purpose, unless such person is the guilty cause of such divorce.”
Although by this section, without the proviso, it would be, to say the least, doubtful whether the marriage of the culpable divorced party would be within either the words or sense of the statute, he in such case not being in a legal sense a married man, and perhaps not being to be considered as having a former wife living, the decree of divorce having terminated the relation of husband and wife, yet it is plain, from the words of the proviso, that the legislature considered such person as being within the statute, as well as the innocent party to the decree of divorce, because it was deemed necessary to save such innocent party, by the proviso, from the operation of the statute; and n doing this, by a sort of exception to the proviso, care was taken that the benefit of it should not be extended to the guilty cause of the divorce. Taking the whole together, the evident intent of the legislature was, to punish a second marriage, by a person who had been before married, the other party to such marriage being alive; excepting from the penalty of the statute only such as had procured a divorce on account of the criminal conduct of the party with whom they had been connected in marriage. It is observable, also, here, that the *516 statute is defective in another important part cular, viz. in ad mitting by implication the lawfulness of a second marriage by one who had been divorced a mensa et thora only : for in the proviso the term divorce is used without any discrimination between the kinds of divorce, and even without stating the cause for which a divorce, which is to protect the innocent party in a second marriage, shall be decreed. But there is no doubt from the whole of the proviso, and the general object of the legislature, that divorces a vinculo were alone intended.
In the year succeeding the enactment of the above statute, another was passed, entitled, “ An Act for regulating Marriage and Divorce,” (St. 1785, c. 69,) in the 2d section of which it is provided, “ that all marriages, where either of the parties shall have a former wife or husband living at the time of such marriage, shall be absolutely void, and no dower shall be assigned any widow in consequence of such marriage,” &c.
Supposing the legislature to have considered the parties to a marriage which had been dissolved as standing in the relation of husband and wife, so far as to bring them within the purview of the former statute, it will follow that a marriage of persons so situated would be void. It is true, that by this statute, standing by itself, the marriage of an innocent party to a divorce would not be protected ; but the statutes, being in pari materia, must be construed together, and the exception in the first cited statute in favor of such person would avail.
It cannot be supposed that the legislature intended to acknowledge the validity of marriages against which they were establishing severe and ignominious punishments. And if the contract of marriage is to be assimilated to other civil contracts, as it is in most cases of controversy respecting it, it is not easy to see why it is not void, where such marriage is expressly prohibited and punished, although it may not be expressly declared void by the legislature. I speak here of a prohib tian relating to the person contracting, and not that which relates to the form of solemnizing the contract.
But the material question in this case is, whether the marriage contracted and solemnized in New Hampshire, by Samuel Bemis, is to be considered void here. We presume it is valid in New Hampshire, because it is not shown, nor do we find or *517 inquiry, that it is unlawful in that State for a divorced party, either guilty or innocent, to enter into another marriage. And if there were such a provision, it is doubtful whether it would be applicable to a case of divorce by a foreign tribunal. The criminal laws of a state do not, ex vigore suo, have force beyond the territory of the state which enacts then. Huber, in his chapter De Conflictu Legum, (tom. 2, lib. 1, tit. 3, sec. 2,' lays it down as a proposition universally assented to, that the laws of any country have force within its jurisdiction, and not beyond, except by comity; and Martens, a respectable writer on public law, in the 28th section of his work, applies the principle especially to criminal law, and limits the force of a sentence or punishment of crime to the country where it was passed.
One, therefore, who is the guilty cause of a divorce, which by our law disables him from contracting another marriage, may lawfully marry again in a state where no such disability is attached to the offence. Whether a person so marrying and returning into this State to live with his second wife, his former wife still living, would be protected from the penalties of the statute against polygamy, is a different question, and would depend upon an admitted exception to the general law as above laid down by Huber. For, according to the same writer, no state is obliged to carry the principle of comity so far as to give force to the laws of another state, if thereby its own authority or the rights of its citizens would be impaired. A marriage in another state by a person disabled by the laws of his own state from entering into matrimony would, under some circumstances, be deemed an evasion, and on that account void. Huber, ubi supra, § 8.[1]
This principle of the public law has been adopted and sanctioned by the courts of common law in England, and in particular applied to matrimonial contracts ; for Lord Mansfield, in Robinson v. Bland, 2 Burr. 1079, says, “It is in general
*518 true, that a marriage in a foreign country must be governed by ^ jaw 0f t[lat country where the marriage is had. And in Ilderton v. Ilderton, 2 H. Bl. 145, the same doctrine is recognized. And Mr. Justice Butter, in his treatise on the Law of Nisi Prius, p. 113, cites a case decided by the Court of Arches and afterwards on appeal by the delegates, that á Scotch mar riage between English parties, contrary to the English statutes respecting marriage, was valid in England. See also Bac. Abr. Marriage and Divorce, C. This was carrying the doc trine further than it is laid down by Huber; for, according to the exception to his third maxim, (same chapter, sec. 2,) such a marriage might be disallowed in the country where the parties lived, on the ground that it was entered into in evasion of the laws of their own country ; the comity of nations not extending so far as to allow the operation of laws or contracts which are prejudicial to their own subjects.
But the case before us is not of that nature, for the guilty husband does not come here to live under the protection of our laws, in open defiance of their authority ; it is his descendants only upon whom the present question can operate, and it would be a harsh measure towards them to deny them the privileges and character of legitimate children, when, under the laws of the State where they'were born, they would be recognized as such.
Admitting the principle adopted by writers, that a contract legally entered into in a foreign country is binding upon the parties, and may be enforced against them in every other country, subject only to the qualification above mentioned, if Samuel Bemis had come into this State to claim in our courts an enforcement of any of his marital rights, it would be competent to the courts here to refuse him, upon the ground that .the marriage on which he founded his claim was contracted in violation of the laws of this State, and that it was contrary to good policy, as well as detrimental to the public manners, that he should be allowed to enforce such claim ; and yet, if his children of the second marriage, after his death, should come here to claim an inheritance from their father, the same strictness is not necessarily to be applied, as the same reason would not to the same extent exist.
*519 It was not intended, nor was it in the power of the legis’attire, to prevent Samuel Bemis from removing into another State, and enjoying there all the privileges of a citizen. Having a right by law to marry there, he could not while there violate the statutes of this State against polygamy. His children, therefore, are legitimate there, and they ought not, unless by virtue of some express legislative act, to be deemed illegit mate here. The disability was only local, limited by the confines of the State which enacted it.
Upon the whole, as the marriage in New Hampshire was lawful there, and to give it effect here for the purpose of this action is not derogatory to the dignity of our own laws, we do not see sufficient reason for questioning the legitimacy of the paupers ; so that their settlement must be held to be in Lexington, where that of Samuel Bemis was.[1]

Nonsuit set aside.

 See Putnam v. Putnam, 8 Pick. 433; Medway v. Needham, 16 Mass R. 157. If a citizen of this State removes into another State, in order to obtain a divorce from his wife, on a ground that would not justify a divorce here, a decree of divorce so obtained is of no validity in this State Hanover v Turner, 14 Mass. R. 227.

 The Chief Justice, after delivering the foregoing opinion, observed, that though he could not say Mr. Justice Jackson concurred in it, yet that his opinion, which was different at the trial, had been very much shaken. — Reporter.